IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

JOY L. JUSTICE, *formerly known as Joy L. Groseclose, on behalf of herself and all others similarly situated*,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC

    Defendant.

CASE NO. 1:18-CV-342

CLASS ACTION

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, JOY L. JUSTICE, on behalf of herself and all others similarly situated, files this Class Action Complaint against Equifax Information Services, LLC ("Equifax" or "Defendant"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"), against Equifax, a national consumer reporting agency. Equifax prepares and furnishes consumer reports that include tax liens. Equifax diligently collects the initial entry of tax liens, however when a later event occurs with respect to those records, for example, when a lien is withdrawn or released, Equifax does not collect the subsequent disposition of that lien.

2. Equifax uses a third-party vendor to gather and report public-record information, including the tax liens at issue in this case. Equifax is aware that its vendor fails and has failed to timely gather these dispositions, and as a result, that Equifax's own systems routinely fail to update such information when tax liens are withdrawn or released. This failure to timely update public

records to reflect the updated status of the tax liens is a violation of 15 U.S.C. § 168le(b) because Equifax has not implemented reasonable procedures to ensure the maximum possible accuracy of the information in its consumer reports concerning the individual about whom the report(s) relate.

3. In fact, Equifax has been sued repeatedly and frequently across the country over the same issues and failures in its standard processes, and has in fact already suffered contested certification of a nearly identical class of consumers in Virginia whose motion survived Equifax's appeal to the Fourth Circuit. And as recently as April 2018, Defendant has been forced to attempt to revise its procedures to wholly remove these judgments and liens because they finally acknowledged that they could not be accurately reported.

4. Plaintiff and each putative class member were the subject of a consumer report published to a third party which inaccurately reflected that a tax lien against them was still due and owing at such time as it had been released or otherwise withdrawn.

**PARTIES**

5. Plaintiff Joy L. Justice is an adult individual residing in Madison, North Carolina and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. Defendant Equifax is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b) and 15 U.S.C. § 1681a(f), respectively. Defendant is authorized to do business in the State of North Carolina, has substantial contacts in this District, and is headquartered at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

**JURISDICTION & VENUE**

7. The Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

9. Defendant is one of the "big three" credit reporting agencies ("CRA") in the United States.

10. Defendant sells consumer reports (commonly called "credit reports") about millions of consumers annually, including consumers in North Carolina.

11. Unlike credit accounts which are reported directly to Equifax by creditors, Equifax affirmatively seeks out and purchases public-records data from third parties who have no relationship with the consumer. These records include North Carolina state and federal tax liens. Equifax proactively gathers and disseminates this derogatory information even though there is nothing in the FCRA that affirmatively requires it to do so.

12. Equifax obtains all its public records from a single third-party entity, LexisNexis.

13. During all times relevant to this action, Equifax has never performed any independent audit of the substantive accuracy of the North Carolina public records that LexisNexis sells it. While Defendant claims to have performed statistical or data integrity reviews, it has never systematically compared the LexisNexis records it receives to the actual public records to determine how many North Carolina lien dispositions have been filed in the various courts but have nonetheless not been applied to those lien records that appear within its credit files.

14. Equifax has long been aware of the problems alleged herein and the failure of its current procedures to ensure that it only publishes complete and accurate public records.

15. Equifax has not retrieved actual public records from courthouses or actual government offices itself for many years.

16. Equifax does not follow reasonable procedures to gather updated information from the courts when tax lien statuses or dispositions change. Instead, Equifax publishes data that it knows would be inaccurate if a change in the disposition occurred—relying on consumers to clean up their own files via the dispute process after learning of the inaccuracy, rather than proactively paying to have these dispositions adequately and reasonably collected with the same vigor that it collected records of the initial entry of the tax liens.

17. The methods and processes used by Equifax and its vendor to gather North Carolina public records and to use those records to update its files were materially the same throughout the class period.

18. Moreover, Equifax not only publishes inaccurate tax lien information, but frequently reports the same entry multiple times on the same report with inconsistent dispositions.

19. At all times pertinent to this Complaint, Equifax's conduct regarding the collection of public-record information was willful and carried out with reckless disregard for a consumer's rights as set forth under the FCRA. By example only and without limitation, Equifax's conduct was willful because it was intentionally accomplished through its intentionally implemented procedures.

20. Equifax has also been on notice of these issues throughout the pendency of the multiple actions brought against it and its industry allies, Experian and Trans Union, over the last six years.

21. As a result of Equifax's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit.

22. Equifax knows that both it and its public records vendor makes mistakes in the distilled public records information that is acquired for purposes of credit reporting.

23. Equifax thus routinely fails to report accurate information about tax liens, including the most up-to-date status.

24. Defendant's practices and procedures regarding the reporting of tax lien information, specifically its failure to report the most up-to-date status of paid and released tax lien, causes widespread harm to those consumers with tax liens filed in courthouses across North Carolina.

## FACTS AS TO PLAINTIFF

25. On or around August 2, 2013, the Internal Revenue Service filed a federal tax lien against Joy L. Groseclose (Ms. Justice's former maiden name) for tax years 2001 through 2003.

26. In or around April 2016, Ms. Justice satisfied this lien.

27. The Internal Revenue Service filed a Certificate of Release of Federal Tax Lien with the Rockingham County Superior Court on April 27, 2016.

28. On or about February 28, 2017, and after learning that Equifax was continuing to willfully and inaccurately publish an inaccurate tax lien status within its credit files, Ms. Justice sent a dispute to Equifax.

29. Ms. Justice also disputed the tax lien through Equifax's online system and uploaded a copy of her Certificate of Release of the Tax Lien.

30. Ms. Justice did not receive a response or any investigation results from Equifax with regard to the tax lien information that she disputed.

31. It is undisputed that Equifax received Ms. Justice's dispute.

32. On October 23, 2017, Equifax forwarded a Notice of Data Breach to Ms. Justice to advise her that a cybersecurity incident had occurred and that, specifically, it had been determined that the documents that she had provided to Equifax in support of her tax lien dispute through Equifax's online portal had been compromised.

33. Even after being provided with the Release of Tax Lien, and pursuant to its usual and systematic practice, Equifax did not update its records to show that the tax lien had been paid and satisfied.

34. The FCRA provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

35. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out with reckless disregard of its obligations as set forth in § 1681e(b) of the FCRA.

36. Discovery will show that Equifax's collecting and reporting the initial entry of tax liens is believed to be of greater economic value to its governmental customers that wish to collect the tax debt than collecting and reporting information indicating that a tax lien has been paid, satisfied or cancelled.

37. The reporting of Ms. Justice's tax lien by Equifax was inaccurate and occurred because Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Justice's consumer report. Specifically, Equifax does not follow the same automated and systematically rigorous processes to obtain all releases, withdrawals or cancellations of tax liens that it follows to obtain the original tax lien information.

38. Indeed, Equifax follows no procedure which assures that every time a tax lien in North Carolina is released, withdrawn or cancelled that the updated status is promptly obtained and reflected upon the consumer's credit report, prior to such time as the consumer notices the problem and takes the time to dispute it.

39. Instead, Equifax continues to blindly report the tax lien balance that it originally received through its vendor, knowing full well that such reporting will be inaccurate in many cases.

40. In Plaintiff's case, Equifax did not request, receive or report any updated information as to the status of the tax lien, despite the fact that the tax lien was paid and released and publicly filed at the courthouse on April 27, 2016.

41. At all times pertinent hereto, Defendant was acting by and through its agents, servants and or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

**CLASS ACTION ALLEGATIONS**

42. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

43. Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All natural persons who: (i) were the subject of a Federal tax lien recorded in the State of North Carolina; (ii) where the tax lien appeared within an Equifax consumer report dated within the five year period preceding the filing date of this Complain (an "Equifax consumer report"), and (iii) where the State of North Carolina public record indicated that the tax lien had been released, withdrawn or otherwise cancelled on a date at least 30 days prior to the date of the Equifax consumer report.

44. **Numerosity. FED. R. CIV. P. 23(A)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief Defendant sells hundreds if not thousands

of consumer reports each year, and those persons' names and addresses are identifiable through documents maintained by Defendant.

45. **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(A)(2).** Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include, among others, whether Defendant willfully violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the North Carolina tax lien information that it reported.

46. **Typicality. FED. R. CIV. P. 23(A)(3).** Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages as Class members, arising out of Defendant's common course of conduct.

47. **Adequacy. FED. R. CIV. P. 23(A)(4).** Plaintiff is an adequate representative of the Class. Her interests are aligned with and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

48. **Predominance and Superiority. FED. R. CIV. P. 23(B)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class

themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I – Violations of 15 U.S.C. § 1681e(b)
### (Class Claim)

49. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

50. The above-mentioned reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

51. Equifax failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the tax lien information in the consumer reports it prepared regarding Plaintiff and the Class members.

52. Equifax's violation of 15 U.S.C. § 1681e(b) was knowing, intentional, reckless and otherwise willful.

53. Pursuant to 15 U.S.C. §§ 1681n and o, Equifax is liable to Plaintiff and all Class members for its failure to comply with FCRA § 1681e(b), in an amount not less than $100 and not more than $1,000 per violation; punitive damages in an amount to be determined by the jury; attorney's fees; and litigation costs, as well as such further relief as may be permitted by law.

54. Plaintiff seeks additional injunctive relief to enjoin the continued reporting of Federal tax lien records recorded in North Carolina.

## COUNT II: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(1)
## (Individual Claim)

55. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

56. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the tax lien from Ms. Justice's credit file.

57. As a result of Equifax's violations of 15 U.S.C. 1681i(a)(1), Ms. Justice suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

58. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was each negligent, entitling the Ms. Justice to recovery under 15 U.S.C. § 1681o.

59. Ms. Justice is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681i(a)(2)(A)
## (Individual Claim)

60. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

61. Equifax violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide LexisNexis with all the relevant information regarding Ms. Justice's disputes.

62. As a result of Equifax's violations of 15 U.S.C. §1681i(a)(2), Ms. Justice suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

63. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Equifax was negligent which entitles Ms. Justice to recovery under 15 U.S.C. §1681o.

64. Ms. Justice is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT IV: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(4)
### (Individual Claim)

65. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

66. Equifax violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider <u>all</u> relevant information submitted by Ms. Justice.

67. As a result of Equifax's violations of 15 U.S.C. §1681i(a)(4), Ms. Justice suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

68. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Equifax was negligent entitling Ms. Justice to recovery under 15 U.S.C. §1681o.

69. Ms. Justice is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT V: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(5)(A)
### (Individual Claim)

70. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

71. Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate collection account from Ms. Justice's credit file or modify the item of information upon a lawful reinvestigation.

72. As a result of Equifax's violations of 15 U.S.C. §1681i(a)(5)(A), Ms. Justice suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

73. The violations of Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Equifax was negligent entitling Ms. Justice to recovery under 15 U.S.C. §1681o.

74. Ms. Justice is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief as follows:

a. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

b. An award of statutory and punitive damages for Plaintiff and the Class for Defendant's violation of 15 U.S.C. §1681e(b);

c. An award of actual, statutory and punitive damages for Plaintiff, individually for Defendant's violation of 15 U.S.C. §1681i(a);

d. An award of pre-judgment and post-judgment interest as provided by law;

e. Injunctive relief as pled;

f. An award of attorneys' fees and costs; and

g. Such other relief as the Court deems just and proper.

**TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

        **Respectfully submitted,**

        **JOY L. JUSTICE,** *formerly known as Joy L. Groseclose, on behalf of herself and all others similarly situated,*

        By:   */s/Leonard A. Bennett*
               Leonard A. Bennett, NC Bar # 21576
               **CONSUMER LITIGATION ASSOCIATES, P.C.**
               763 J. Clyde Morris Boulevard, Suite 1-A
               Newport News, Virginia 23601
               Telephone: 757-930-3660
               Facsimile: 757-930-3660
               Email: lenbennett@clalegal.com

Matthew J. Erausquin
**CONSUMER LITIGATION ASSOCIATES, P.C.**
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone: 703-273-7770
Facsimile: 888-892-3512
Email: matt@clalegal.com
*Pro hac vice* application forthcoming

*Attorneys for Plaintiffs*